Jerome MACKEY

v.

Ronald THOMPSON, et al.

NO. 2016–CA–0297

Court of Appeal of Louisiana, Fourth Circuit.

NOVEMBER 16, 2016

---

Timothy R. Richardson, USRY WEEKS & MATTHEWS, APLC, 1615 Poydras Street, Suite 1250, New Orleans, LA 70112, COUNSEL FOR PLAINTIFF/APPELLANT

Kristopher M. Gould, James R. Nieset, Jr., PORTEOUS, HAINKEL & JOHNSON, 704 Carondelet Street, New Orleans, LA 70130, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Judge Terri F. Love, Judge Max N. Tobias, Jr., Judge Madeleine M. Landrieu)

Judge Madeleine M. Landrieu

|₁The plaintiff, Jerome Mackey, appeals the trial court's granting of summary judgment dismissing his suit against the defendants, Ronald Thompson and his wife, Kim Thompson. For the reasons that follow, we affirm.

**FACTS AND PROCEEDINGS BELOW**

Mr. Mackey filed suit against the Thompsons alleging they were liable for injuries he sustained when he fell from the roof of their house on December 29, 2012, fracturing his clavicle and injuring his hand. The petition alleges that Mr. Thompson had hired Mr. Mackey earlier that day to put a new roof on the house. Mr. Mackey fell while attempting to climb down from the roof on a ladder provided by Mr. Thompson.

The Thompsons filed a motion for summary judgment on October 21, 2015, asserting that Mr. Mackey lacked any evidence to establish that they were at fault in causing his accident. In support of their motion, the Thompsons attached excerpts from the depositions of Mr. Mackey and of Eric Johnson, a nonparty to this litigation who was assisting Mr. Mackey on the day of the accident. The |₂Thompsons argued that the plaintiff's own deposition testimony establishes that his fall was solely caused by his own negligence and/or the negligence of Mr. Johnson. In opposition to the motion the plaintiff submitted the entire depositions of Mr. Mackey and Mr. Johnson, as well as the affidavit of John Barry, a licensed contractor hired by the plaintiff to inspect and photograph the roof and ladder after the accident.

The trial court heard the motion on December 4, 2015. At the conclusion of the hearing, the trial judge granted the summary judgment from the bench. On January 6, 2016, the court rendered a written judgment granting the Thompsons' motion

and dismissing the case with prejudice. This appeal followed.

## ISSUE

The sole issue raised by the appellant, Mr. Mackey, is whether the trial court committed legal error by granting the motion for summary judgment.

## APPLICABLE LAW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." [1] Where, as here, the mover will not bear the burden of proof at trial, his burden on the motion "does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." [2] "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." [3]

An appellate court reviews the granting of a motion for summary judgment *de novo*, utilizing the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Schroeder v. Board of Supervisors of Louisiana State University*, 591 So.2d 342, 345 (La.1991); *Hill v. Shelter Mut. Ins. Co.*, 2005–1783, p. 2 (La. 7/10/06), 935 So.2d 691, 693.

## DISCUSSION

The evidence before the trial court consisted of two depositions (Mr. Mackey and Mr. Johnson) and the affidavit of Mr. Barry with attached photographs. Mr. Mackey testified that at the time of the accident he was self-employed and had worked for more than thirty years doing home renovations and building houses. He did not have his own company but worked for others usually by referral. Mr. Mackey, who does not have a contractor's license, was taught to do home renovations by his grandfather and also studied carpentry for one and one half years at McNeese State University. He had done multiple jobs for Mr. Thompson before the incident in question. On the morning of December 29, 2012, Mr. Thompson picked Mr. Mackey up at his home, which was about fifteen blocks from the Thompsons' house. Mr. Mackey agreed to do the work (placing plywood and felt on the Thompsons' roof) for a price of $175.00. Mr. Mackey accompanied Mr. Thompson to Home Depot, where Mr. Thompson purchased the supplies needed for the job before proceeding to the house. Mr. Mackey testified that he began working on the roof about 11:00 a.m. At some

1. La. C.C.P. art. 966 B (2) (prior to its amendment by La. Acts 2015, No. 422, effective January 1, 2016). Because the motion for summary judgment at issue here was filed prior to the effective date of the amendment to Article 966, the former version of the article applies. The amendment is not pertinent to the issues raised in this appeal.

2. La. C.C.P. art. 966 C (2) (prior to its amendment by La. Acts 2015, No. 422, effective January 1, 2016). The quoted language was not changed by the 2015 amendment.

3. La. C.C.P. art. 966 C (2) (prior to its amendment by La. Acts 2015, No. 422, effective January 1, 2016). The current version of Article 966 provides, in pertinent part: "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966 D (1). This amendment of the quoted language clarified, but did not change, the law.

point Mr. Thompson left and was gone for four to five hours, leaving Mr. Mackey to finish the job. Mr. Thompson was not present when the accident occurred. Mr. Mackey was being assisted by Mr. Johnson.[4] Mr. Johnson had been holding the ladder so that Mr. Mackey could ascend and descend from the roof. Around 7:00 p.m., Mr. Mackey was on the roof, and he called out to Mr. Johnson, asking Mr. Johnson to hold the ladder so he could come down. He heard Mr. Johnson say, "I got it." Mr. Mackey stepped down, thinking Mr. Johnson was holding the ladder. However, Mr. Johnson was not holding the ladder, thereby causing Mr. Mackey to slip and fall. The ladder fell to the ground, and Mr. Mackey landed on top of it. Mr. Mackey testified that he fell because Mr. Johnson was not holding the ladder, saying: "Now, if he had been holding the ladder, I wouldn't have fell [sic]." When asked a second time if he would have fallen had Mr. Johnson been holding the ladder, Mr. Mackey responded, "No, sir."

Mr. Johnson testified that he worked as a handyman doing odd jobs. At the time this incident occurred, Mr. Johnson was living on the same street as Mr. Thompson and had worked with him once or twice. Mr. Johnson said he was walking down the street that afternoon when Mr. Mackey, who was on the peak of the Thompsons' roof, stopped him and asked him if he wanted to make some money helping with the roofing job. Mr. Johnson agreed. He expected to be paid by Mr. Mackey. Mr. Johnson held the ladder whenever Mr. Mackey had to come close to it. When Mr. Mackey was ready to come down, he asked Mr. Johnson to hold the ladder. Mr. Johnson had been picking up stuff in the yard and moving wood out of the way. He re-

sponded "all right," and started walking towards the ladder. Before Mr. Johnson could get to the ladder, however, Mr. Mackey slipped and fell. Mr. Johnson did not tell Mr. Mackey he was not yet at the ladder because he believed Mr. Mackey could see that. Mr. Mackey started coming down while Mr. Johnson was trying to grab the ladder, at which point Mr. Johnson did not have enough strength to hold it.

In addition to these two depositions, the trial court considered the affidavit of John Barry. Mr. Barry is a contractor licensed in Louisiana and two other states. He physically inspected the roof and ladder in question after the incident and took photographs. He stated that the ladder Mr. Mackey used, which was provided by Mr. Thompson, was designed for use on flat surfaces rather than grassy terrain, and that an all-purpose ladder would have allowed for a better grip in the yard. He stated that it was unsafe for an individual to work on that particular roof, which had a high pitch, without someone holding the ladder or the ladder being secured to the roof. He averred that as a licensed contractor, he considered it dangerous to allow a non-roofer to work alone on that roof. He averred that in his opinion, Mr. Thompson did not provide a safe working environment for Mr. Mackey.

The appellant argues, as he did in the trial court, that Mr. Barry's affidavit presents a genuine issue of material fact precluding summary judgment. We disagree.

■■■ To prevail on a negligence claim, the plaintiff must prove the following five elements: "(1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant failed to do so; (3) the

4. Mr. Mackey testified that Mr. Johnson also had been hired by Mr. Thompson. Mr. John-

son's testimony disputes this assertion.

defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages to the plaintiff occurred." *Meany v. Meany*, 94–0251, pp. 5–6 (La. 7/5/94), 639 So.2d 229, 233. To prevail on their motion for summary judgment, the Thompsons had to show that the plaintiff lacked factual support for any one of these elements. La. C.C.P. art. 966. The motion was based upon the plaintiff's lack of evidence to show that any conduct on the part of Mr. Thompson *caused* Mr. Mackey's fall. The affidavit of Mr. Barry does not address causation. That is, there is nothing in the affidavit that contradicts Mr. Mackey's testimony that he fell because Mr. Johnson was not holding the ladder. Moreover, Mr. Johnson's deposition testimony as to how the accident occurred supports Mr. Mackey's account.

L7The appellant argues that the affidavit presents a genuine issue of fact as to whether Mr. Thompson breached a duty he owed to Mr. Mackey by supplying Mr. Mackey with a defective ladder—that is— one not suitable for the purpose intended.[5] This argument is misplaced. Even assuming the affidavit raises an issue of fact as to whether there was a breach of any duty owed, that issue is not material to the motion for summary judgment. The defendants presented deposition evidence showing that the accident was solely caused by the fault of Mr. Mackey and/or Mr. Johnson. The burden then shifted to the plaintiff to present contravening evidence showing that the accident was caused by the conduct of the Thompsons or someone for whom they were responsible. The plaintiff failed to present such evidence.[6]

Therefore, the trial court did not err by granting the defendants' motion for summary judgment and dismissing the plaintiff's action.

## CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

**AFFIRMED.**

---

**5.** The trial judge rejected this argument, finding that Mr. Mackey was in a better position than Mr. Thompson to know whether the ladder provided was suitable for the job. The trial judge found *Lawrence v. Sanders*, 49,966 (La.App. 2 Cir. 6/24/15), 169 So.3d 790, *writ denied*, 2015–1450 (La. 10/23/15), 179 So.3d 601 to be persuasive authority on this point.

**6.** Although Mr. Barry's affidavit does not address causation, it states that it would be unsafe for someone to work on the roof *without the ladder being held*. This opinion tends to support, rather than contravene, the testimony of Mr. Mackey and Mr. Johnson concerning how the accident occurred.